## SUAREZ v. MANHATTAN RY. CO. et al.

*(Supreme Court, General Term, First Department. June 26, 1891.)*

**1. ELEVATED RAILROADS—RIGHTS OF ABUTTERS—INJUNCTION.**
In an action against an elevated railroad company to recover damages caused by the construction of defendants' road in the street on which plaintiff's property abuts, without having made compensation for the appurtenant easements of light, air, and access, and to enjoin the maintenance of the road, it is proper to include in the injunction a clause forbidding the running of trains on defendants' road, since the running of trains is one of the incidents to the maintenance of the road.

**-2. SAME—FINDING AS TO DAMAGES.**
A finding in such case that the value of plaintiff's interest in the premises was lessened by the taking of the easements in the sum of $12,000 is not a commutation of future trespasses, but is simply a finding as to the present value of the easements taken, on payment of which defendants should be relieved from the operation of the injunction.

**:3. DAMAGES—ACTS SUBSEQUENT TO ACTION.**
Where defendants request a finding of the damages suffered down to the time of the trial, and such damages are so found and allowed, they cannot afterwards object that damages for acts committed after the action was brought were allowed.

Appeal from special term, New York county.

Action by Peter Santos Suarez against the Manhattan Railway Company and the Metropolitan Elevated Railway Company, to restrain the maintenance of an elevated railroad in front of plaintiff's premises, and for damages. The prayer of the complaint was "that each and all of the defendants be perpetually restrained and enjoined from any and every act towards maintaining, constructing, or operating the above-described elevated railroad, or any part or accessory thereof, along said Trinity place, or adjoining or in front of the plaintiff's premises above described, and that the plaintiff recover against the defendants said yearly loss of rent from July, 1883, or if the defendants be permitted such use of the said structure through said Trinity place as they heretofore have had, it shall only be on condition of their paying to the plaintiff the sum of one hundred thousand dollars, or the value of the easements taken, and that the plaintiff have the costs of this action and such other and further relief as to the court may seem just and proper." The court gave judgment in favor of plaintiff for $8,060.39 damages and costs, and granted the injunction. It was further ordered "that in case the defendants shall tender, for the purpose of execution by the plaintiff, a form of conveyance or grant by the plaintiff to the defendants of the property of the plaintiff found to have been taken herein by the defendants, and in case of the plaintiff having executed such conveyance or grant, and of the plaintiff having delivered or tendered for delivery the same to the defendants, the defendants shall pay to the plaintiff the sum of twelve thousand dollars, ($12,000,) with interest from the date of this judgment, then this judgment of injunction and restraint shall not in any way be operative." Defendants appeal.

Argued before VAN BRUNT, P. J., and BARRETT and PATTERSON, JJ.

*Davies & Rapallo, (Julien T. Davies* and *Samuel Blythe Rogers,* of counsel,) for appellants. *John A. Weeks, Jr.,* and *Henry A. Foster,* for respondent.

BARRETT, J. There is but little in this case which has not already been passed upon in numerous decisions of the court of appeals and of this court. Upon the merits we think the money awards made at the special term were moderate, and we find no errors in the admission or rejection of evidence. Novelty is claimed for the point that it was error to grant an injunction against the running of trains, but judgments in this form have been repeatedly granted and sustained. The operation of the road has been invariably treated as an incident to the maintenance and use of the structure. In the

*Lahr Case*, 104 N. Y. 269, 10 N. E. Rep. 528, it was expressly held that the defendant was liable for the operation of its trains, and the consequences flowing therefrom are incidents to the permanent structure which necessarily increase and aggravate the plaintiff's injury. "The structure here, and its intended use," said RUGER, C. J., "cannot be separated and dissected, and it must be regarded in its entirety in considering the effect which it produces upon the property of the abutter." The learned counsel for the defendants have submitted an elaborate brief, in which they seek to distinguish this case from the *Lahr Case*, but we think unsuccessfully. They concede that as to past trespasses the law holds the defendants liable for all the incidents of such trespasses, but they insist that, in estimating the fee value, such incidents should be disregarded. What the court at special term did was to ascertain the value of the plaintiff's easements at the time of the trial. These were the easements of light, air, and access, and such were the easements "taken" by the defendants. It was found that the value of the plaintiff's interest in the premises was lessened by that "taking" in the sum of $12,000. This was not, as the defendants contend, a commutation of future trespasses, nor was it an indirect way of requiring the defendants "to pay for the incidental results of future imaginary trespasses." It was simply a finding as to the present value of the easements, upon payment of which the defendants might relieve themselves from the operation of the injunction. The *Lahr Case*, although an action at law, affords a complete justification for the finding. The plaintiff there was permitted to recover all the damages occasioned to his property by the taking of the easements. That case was taken out of the operation of the *Uline Case*, 101 N. Y. 98, 4 N. E. Rep. 536, by the consent of the parties, and the rule with regard to the abutter's entire damage was laid down with distinctness. That rule, even within the limitations suggested by EARL and FINCH, JJ., covered the damages sustained by abutting owners by reason of the construction and operation of the railway, so far as such damages resulted from the taking or destruction of their street easements of light, air, and access. The defendant's argument on this head is refined and subtle, but its fallacy lies mainly in the postulate that the court has required the defendants, as the sole condition upon which they may legalize their structure, to pay for the right to run trains. The court has done nothing of the kind. It has given the defendants an opportunity, even at this late day, to pay for the easements taken, and the price of those easements is their lessened value to-day resulting from the unlawful maintenance of the structure and operation of the road thereon.

We do not think any of the other points deserving of special consideration, except the complaint that the court below awarded damages for acts of the defendants subsequently to the commencement of the action. There might be some difficulty with regard to this finding, in view of the decision of this court in *Cornell* v. *Railway Co.*, 13 N. Y. Supp. 511, (decided March 13, 1891.) But we think the defendants cannot avail themselves of the objection, because of their own request to the learned judge to find the damages down to the time of the trial. Their fifth conclusion of law specifically embraces this very proposition, and, although it is preceded by a statement that they do not consent to the finding, it is evident that thereby they simply intend to guard against any possibility of assent to the amount to be specified by the learned judge in the finding. We need not, therefore, consider the main question, nor the subsidiary one, as to whether the findings would justify a modification of the judgment by the deduction of what might otherwise be deemed in excess of what is authorized. Upon the whole, and without adverting to several other points taken by the appellants,—which we deem unsubstantial,—we think the judgments should be affirmed, with costs. All concur.